UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARK QUIRINO AND JENNIFER RAE QUIRINO** § § § § *Plaintiffs* § v. § § **KEYSTONE RV COMPANY** § § *Defendant* § | | CIVIL ACTION NO: 3:21-cv-03141 JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1. Plaintiffs, MARK QUIRINO and JENNIFER RAE QUIRINO, now and have been at all times material hereto a citizens of the State of Texas.

2. Defendant, KEYSTONE RV COMPANY, hereinafter "KEYSTONE", is an Indiana company and citizen of the state of Indiana with its principal place of business the state of Indiana and is a final stage recreational vehicle assembler and engages in the assembly and sale of recreational vehicles in the State of Texas.

KEYSTONE's agent for service of process is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN, 46204.

### II. Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. Plaintiff is seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or

personal, which may have been acquired in violation of the Texas DTPA. Plaintiff is also seeking treble damages under Texas DTPA §17.50(b)(1), therefore, Plaintiff's damages which will exceed $100,000.00, not including attorney fees and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III. Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56. VENUE. An action brought under this subchapter may be brought:

(1) in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code; or

(2) in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033. Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or *in the county in which the plaintiff resided at the time the cause of action accrued*.

### IV. Conditions Precedent

5.    All conditions precedents have been performed or have occurred.

### V.    Facts

#### A.    The Transaction

6.    On MAY 24, 2020, Plaintiffs purchased a new 2020 VOLANTE 33D8 bearing VIN: 4YDT33D20L6360773, hereinafter "VOLANTE," from EXPLOREUSA RV, LTD. in Alvin, Texas. The VOLANTE was purchased primarily for Plaintiffs' personal use. The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

7.    The sales price of the VOLANTE was $33,957.44, excluding finance charges. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

8.    Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

9.    Plaintiffs are seeking treble damages under Texas DTPA §17.50(b)(1), therefore, Plaintiffs's damages which will exceed $100,000.00, not including attorney fees and costs.

#### B.    Implied Warranties

10.    As a result of the sale of the VOLANTE by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the VOLANTE would pass without objection in the trade under the contract description; and that the

VOLANTE was fit for the ordinary purpose for which such motor vehicles are purchased.

11. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

12. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the VOLANTE, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the VOLANTE had, in fact, repaired the defects.

13. Plaintiffs' purchase of the VOLANTE was accompanied by express warranties offered by the Defendant, FOREST RIVER, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the VOLANTE.

14. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the KEYSTONE's warranty booklet and owners manual.

### D. Actionable Conduct

15. In fact, when delivered, the VOLANTE was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to the following statement by Plaintiffs:

> "On May 24, 2020, we purchased a 2020 Volante Travel Trailer for $33,957.44 from ExploreUSA, (Alvin, TX) but we received the Travel Trailer on June 4, 2020.
>
> On July 7, 2020, we scheduled a service due to several issues (service record is provided) for leaks in the main bathroom which caused water to leak from the underbelly, a leak in the main door and window, and the faucet was not appropriately installed and leaked, and numerous cosmetic issues due to manufacturing errors.
>
> Within a few days, they called us to let us know that our travel trailer had been repaired. They reviewed the cosmetic work with us and told us that they repaired the plumbing in the bathroom and that they sealed the window by the main door - they said that was where the bedroom leak was coming from.
>
> We used the camper a few more times before we shut it down for the season, and when we reopened the camper in March, that is where we noticed the mold in the back slideout.
>
> In March 2021: We contacted Explore USA regarding the mold and they said it could be due to hard freeze and winter conditions we had the months prior.. They told us to clean it up and monitor it, to see if it comes back. With that said, they said that due to the Pandemic and the hard freeze, they're service availability is 2 -3 months out.
>
> In April, 2021: When we returned to the camper a month later, the mold was back and spread up the wall and all the way down to the end of the slide out. We called Explorer USA and they told us they were several months out for service availability, so they gave us the number to call Keystone Customer Service, which is the manufacturer. So, we called Keystone and explained that they were several months out and two hours away from us, and they told us that we can take it to a local dealership that works on Keystone productions. Thus, we made an appointment at Holiday World (Willis, TX), which was 6 weeks out, so we made an appointment on July 5th.
>
> Prior to our July 5th appointment, we checked in on the camper while it was raining, and we noticed the leak that was previously "reported" fixed was still there because there was water all over

the floor - all the way to the Master Bedroom and almost to the middle of the kitchen by the refrigerator.

On July 5th, Holiday World looked at the unit and said there was significant water damage in numerous places and they were not able to service the unit, so we called Keystone back and referred us to two other places in out area - We called both places and one said they're body shop was 4 hours north of us, and the other one was 6 months out.

At that point, we reached out to the Service Manager at Explorer USA and he said that he will open up an appointment for us to bring it in on July 16, 2021.

On July 16, 2021, we dropped off the Travel Trailer and we spoke to the service manager - he stated that he was new - and brought out the service report when it was repaired previously - and he stated that "he was concerned that it was still leaking and also questioned why the unit didn't have a water test done back in July of 2020 when records show there has been leaks. The service record only shows caulking around the window, so how did they know where it was leaking without a water test." Also, while walking in the unit, he stated "that both slide outs have water damage, the molding on the bottom of the front slide out has a gap, and that is caused by water damage and the back wall in the bunk house had a water line down the wall, and the back slide out had significant water damage to create all of that mold." I expressed that when we pulled the slide out in the back out, the molding popped off of the frame". Then we went outside to look at the slide outs and he stated " the slides out had a 4-6 inch bulge when the slide outs are out of the unit - which he said it shouldn't do that and he understands why the molding would pop off. Thus, stated, that the slides shouldn't do that and they know more once they remove the slide outs and see what was going on." While walking around the back of the unit, the back wall was bulging out, he stated "that there could be water damage because of the softness of the wall." Then I asked about the outdoor light on the top of the unit not working, the hitch not working properly, and the Co2 detector not working properly. The service manager said they could all be related to water leaking into the unit. The service manager asked the service advisor to go get the red dots from the office which then he placed on all the concern places on the unit. He placed about 20

-6-

**dots on the inside and outside of the unit.**

**Two days later, the service lady called back and said it was going to $2500.00 and they were going to call Keystone to get approval. I questioned them regarding all of the issues that were discussed previously with the service manager - and she stated "that she was not aware of the bulging, watermark, mold, or that both slides were leaking, so she said she would get back with the service technician and service manager." She also stated that "the molding pops off and walls bulge and the outside of the unit, the walls will soften and she's been in the business for 3 years, and knows that this is a common issue." Then she stated "that our unit was in better shape than most units on the lot." With that said, she was not the original adjuster that walked the unit, that lady is no longer with Explorer USA.**

**At that point, we reached out to the General Manager and he stated that "he would personally walk the unit, and the comments that she made do not commonly happen to RV's that he is aware of."**

**All the while, we have been in contact with Keystone Resolution Dept., about our concerns with the travel trailer. One conversation: Before the until can be sold, they have to do a pre-walk through to see if there are any manufacture defects, and one of the issues the costumer service lady pointed out to us - is that both slide out seals were dry rotted and they put lubricant on it, which they felt was significant enough to resolve that issue. They also brought up concerns, on why our unit was not water tested when we brought it in for service for leaks.**

**Keystone received the first service order to repair slide out, light and hitch, and Co'2 detector. We brought up concerns that there was "significant" water damage that they did not report. The lady stated that she was going to give this to the Customer Resolution Manager, but she was also concerned on why they haven't done a water test, but have put in a claim for repairs.**

**Keystone's Customer Resolution Manager reached out to Explorer USA and requested a water test and mold test on the unit. 5 days after the request, we called Keystone and the representative said there were 5 areas on the roof that were leaking due to caulking, not manufactured properly (some at**

**least 3 inches away from the seam), also, the seals are 3 inches short on each side both slide outs-- which would allow water to leak into both slide outs, and the windows were leaking. Then she said, these are things they should have seen when they get the unit into the dealership and do the "pre-walk" through before they put the unit on the lot for sale.**

**Few days later, Keystone's Resolution Manager reached out to us, and we went over the concerns with the unit, she spoke to the dealership to make sure the unit was fixed properly - then stated if the unit couldn't be fixed properly or safe to be in, they would go another avenue.**

**August 26, 2021, the Keystone Resolution Manager called said parts were shipped to the dealership and that she would make sure it was fixed properly and that another water and mold test was done to the unit. At that point, I was told her I was concerned about the areas that were leaking over a years time, having done damage to walls, floors and ceiling. And she stated again, we will not receive a unit with water damage or mold. At that point, I let her know that we have not be able to use the camper this 2021 Camping Season, but we have been paying our permanent campsite, monthly dues, insurance and loan note. She stated "when all of this is completed, she would talk about a "Good Will Payoff" for the inconvenience and the cost of not being able to use the camper."**

**The unit was purchased under Jennifer Sowell, DOB: 09-28-1977. However, Jennifer and I got married in June 2021, so her current last name is Jennifer Quirino.**

16. Since purchase, Plaintiffs have returned his VOLANTE to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendant were given the opportunity to repair the VOLANTE, the more significant and dangerous conditions were not repaired. Defendant failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the VOLANTE, continues to this day to exhibit some or all of the non-conformities described herein.

17. The defects experienced by Plaintiffs with the VOLANTE substantially impaired its use, value and safety.

18. Plaintiffs notified the Defendant of the defective conditions in the VOLANTE.

19. Plaintiffs are sending his Texas DTPA notice letter with this Amended Complaint.

### VI.  Causes of Action

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

20. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

21. Plaintiffs are a "consumer" as defined in the DTPA.

22. Defendant violated the following provisions of the DTPA:

   a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

   b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

   c. §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

   d. §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

   e. §17.50(3): an unconscionable action or course of action as defined by §17.45(5); and

   f. §17.46(b)(12): misrepresenting agreements and legal rights.

23. Because of the inherent defects in the VOLANTE which defects existed at the time

the VOLANTE was sold although not discovered until later, the VOLANTE was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such recreational vehicles are used. Furthermore, Defendant failed to perform the repair work in a good and workmanlike manner. This conduct by Defendant constitute a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

24. When the VOLANTE was not repaired, the express warranties that it would be and had been repaired were breached. Defendant's breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25. Defendant's statements that the VOLANTE's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendant's services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26. The Defendant's acts or practices in the selling and/or repairing of the VOLANTE to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs's lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

27. Plaintiffs further contends that Defendant's violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

28. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

29. Any purported waiver or limitations of rights under DTPA by the Defendant is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

    (a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

        (1) the waiver is in writing and is signed by the consumer;

        (2) the consumer is not in a significantly disparate bargaining position; and

        (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

    (b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

    (c) A waiver under this section must be:

        (1) conspicuous and in bold-faced type of at least 10 points in size;

        (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

        (3) in substantially the following form:

        "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver.

    (d) The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

30. Any purported limitation or reduction in the statute of limitations by the Defendant

-11-

under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

    (a)    Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

    (b)    This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

31.    Under DTPA the statute of limitations is two years §17.565. LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiffss proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiffss to refrain from or postpone the commencement of the action.**

32.    The limited remedy in Defendant's warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendant or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

33.    The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

34.    Plaintiffs seeks the remedy of rescission of the sales contract under §17.50(b)(3) and seeks an order necessary to restore to Plaintiffs any money or property, real or personal, which may

have been acquired in violation of the Texas DTPA.

35. As a direct and proximate result of Defendant's willful violation of its obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the , damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, mental anguish and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $100,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

36. Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendant' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT**

37. Plaintiffs re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

38. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's VOLANTE or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant

issued an expressed written warranty which covered the VOLANTE and warranted that the VOLANTE was free of defects in materials and work quality at the time of delivery.

39. As alleged above, the Defendant breached its warranties by offering for sale, and selling as safe to Plaintiffs a VOLANTE that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

40. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

41. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 3: BREACH OF IMPLIED WARRANTIES**

42. Plaintiffs re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

43. The Defendant impliedly warranted that Plaintiffs's VOLANTE which it designed, manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

44. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the VOLANTE had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

45. Because of the defects, Plaintiffs's VOLANTE is unsafe and unfit for use and has

caused economic loss to the Plaintiffs. Therefore, the Defendant breached the implied warranty of merchantability.

46. The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 4: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

47. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

48. The Defendant had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

49. The Defendant breached its duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

    a. Failure to design and manufacture a VOLANTE that did not harbor the defects alleged herein;

    b. Failure to notify Plaintiffs of the dangerous and defective condition of the VOLANTE when Defendant knew or should have known of the dangerous and defective condition;

    c. Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

    d. Failure to repair the VOLANTE in accordance with the express and implied warranties.

50. The damages Plaintiffs have suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 7:    NEGLIGENT REPAIR**

51. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

52. On numerous occasions, Plaintiffs delivered the VOLANTE to Defendant for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

53. On each occasion that Plaintiffs returned the VOLANTE for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendant attempted repairs of the VOLANTE pursuant to their obligations under the express and implied warranties. Defendant owed a duty of care to Plaintiffs to perform repairs on the VOLANTE in a good and workmanlike manner within a reasonable time. These Defendant breached this duty.

54. Defendant's attempted repairs of Plaintiffs' VOLANTE were done so negligently, carelessly, and recklessly as to substantially impair the VOLANTE 's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs' VOLANTE fully and completely repaired by Defendant, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendant' attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendant's repair attempts, Defendant represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

55. As a direct and proximate result of Defendant's negligent failure to repair the

VOLANTE within a reasonable time or within a reasonable number of attempts, Plaintiffs was forced to take delivery of the defective and dangerous VOLANTE. As a further direct and proximate result of Defendant's failure to repair the VOLANTE in a timely and workmanlike fashion, Plaintiffs was forced repeatedly to take the VOLANTE in for further repair attempts and to leave the VOLANTE for long periods of time at great inconvenience to Plaintiffs wherein he sustained actual damages.

56. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

### VII.   Economic and Actual Damages

57. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

   a. Out-of-Pocket Rule. Recovery of the difference between the price paid and the actual value of the property acquired.

   b. Benefit of the Bargain Rule. The difference between the value of the goods and services would have had if they had been as promised and their value as delivered.

   c. Costs of Repairs.

   d. Loss Profits.

   e. Loss of Use.

   f. Diminished or reduced market value.

      g.    Damages for Mental Anguish.

## VIII.    Request for Rescission of the Sale under Texas DTPA §17.50(b)(3)

58.    Plaintiffs are seeking a rescission of the sale under Texas DTPA §17.50(b)(3) and is seeking an order necessary to restore to him any money or property, real or personal, which may have been acquired in violation of the Texas DTPA.

59.    Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to him the money obtained by Defendant as a result of their breach of Texas DTPA as set forth above. Plaintiffs also seek cancellation of the debt and now offers to return the VOLANTE to Defendant.

## IX.    Multiple Damages

60.    The Defendant's conduct in violation of the DTPA was committed knowingly, as that term is defined under Texas DTPA in that Defendant had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

61.    Plaintiffs further show that such acts, practices, and/or omissions were committed "intentionally" in that Defendant specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

62.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by §17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of his economic damages.

## X.    Attorney Fees and Costs

63.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct

of Defendant as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.  Prayer

64. For these reasons, Plaintiffs pray for judgment against the Defendant for the following:

a. For general, special and actual damages according to proof at trial;

b. Rescinding the sale of the  2020 VOLANTE 33D8 bearing VIN: 4YDT33D20L6360773 under Texas DTPA §17.50(b)(3) and an order necessary to restore to Plaintiffs any money or property, real or personal, which may have been acquired in violation of the Texas DTPA and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c. For incidental and consequential damages according to proof at trial;

d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e. Any diminution in value of the VOLANTE attributable to the defects;

f. Past and future economic losses;

g. Prejudgment and post-judgment interest;

h. Damages for loss of use of vehicle;

i. Civil Penalties and/or Punitive damages;

j. Damages for mental anguish;

k. Attorney fees;

l.      Costs of suit, expert fees and litigation expenses; and

m      All other relief this Honorable Court deems appropriate.

### XII.    Demand for Jury Trial

65.    Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
(337) 371-0375

ATTORNEY FOR PLAINTIFFS